PETER F. AND DOREEN J. JUNKER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Junker v. Commissioner
Docket No. 21563-84.
United States Tax Court
T.C. Memo 1987-103; 1987 Tax Ct. Memo LEXIS 99; 53 T.C.M. (CCH) 214; T.C.M. (RIA) 87103; February 23, 1987. J. Benjamin Selters, II, for the petitioners. Marilyn Devin, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined a deficiency in petitioners' 1980 income tax in the amount of $13,367. Due to concessions, the only issue for determination is whether Doreen J. Junker qualifies under section 6013(e) [1] as an "innocent spouse." *100 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Petitioner Peter F. Junker (Peter) lived in Hollywood, California and petitioner Doreen J. Junker (Doreen) lived in Newark, New Jersey at the time their joint petition was filed in this case. During 1980, they were married and living together in Van Nuys, California. [2] At that time Peter was 30 years old and was employed by an insurance underwriter during part of the year and by a broker for the balance. Doreen was 32 years old, a college graduate, and employed by Allianz Insurance Company as a supervisor of eleven individuals. She had signed and filed income tax returns since about 1970. During 1980 they each had earnings of about $30,000.00 which they deposited to a joint bank account. During the fall of 1980, Peter explored the "tax savings" offered by a video tax shelter known as Consultation and Management International ("CMI"). He received a copy of its "prospectus" which stated that its "sole objective *101 is to either substantially reduce or completely eliminate your taxes * * *." On December 10, 1980, Peter agreed to invest $15,000 in the shelter and gave CMI a check drawn on petitioners' joint checking account for $7,500. On the same date he also signed and gave CMI a promissory note for $7,500 payable together with interest on or before February 1, 1981. On January 19, 1981, Peter paid CMI for the note and interest with two checks in the amounts of $7,500 and $82.19 drawn on the joint checking account. On January 31, 1981, Peter moved out of petitioners' apartment. However, on February 13, 1981, he returned with a joint income tax return for 1980 which Doreen signed. The return reflected a combined gross income for the petitioners of $57,560 and, on Schedule C, a $51,000 loss allegedly arising out of Peter's investment in CMI. The CMI investment in 1980 also resulted in a purported excess of investment tax credit which was available for carryback to Doreen's income tax return for 1977 which she had filed as an unmarried individual. An Application for Tentative Refund for 1977 was filed with respondent in March 1981. The application was signed by Peter. He also signed Doreen's *102 name to the application. At about this time Peter informed Doreen that he had or was going to file for a dissolution of their marriage and each of them hired a separate divorce attorney to attempt to arrive at a property settlement. During the settlement negotiations, Doreen received at the apartment refund checks for 1977 and 1980 of $2,525 and $14,009, respectively. She gave the checks to her attorney who deposited them in his escrow account pending the dissolution of the marriage. On January 14, 1982, the Los Angeles County Superior Court entered an interlocutory judgment of dissolution of the marriage. As part of the judgment, the court divided the "commmunity and quasi-community assets" of petitioners as follows: A. To [Peter] as his sole and separate property: 1. All furniture, furnishings, appliances, books, art objects and household supplies within the possession of [Peter]. 2. The 1978 Datsun 280Z automobile, California license number Z PISTOL. 3. One-half (1/2) of the proceeds of the termination of the financial accounts in the names of the parties, in the amount of $4,000.00. 4. Petitioner's accrued retirement benefits, if any through Petitioner's *103 employer, J.L. Kelley West, Inc. 5. The investment interest in the business known as Consultation and Management International. 6. All items of personal property assets, clothing, jewelry and other personal effects either worn or used by [Peter] and currently in his possession. B. To [Doreen] as her sole and separate property: 1. All furniture, furnishings, appliances, books, art objects and household supplies within the possession of [Doreen]. 2. One-half (1/2) of the proceeds of the termination of the financial accounts in the names of the parties, in the amount of $4,000.00. 3. The 1980 California State income tax refund in the amount $3,062.00. 4. The 1980 Federal income tax refund, in the amount of $17,000.00. 5. [Doreen's] accrued retirement benefits, if any, through [her] employer, Allianz Insurance Company. 5. All items of personal property assets, clothing, jewelry and other personal effects either worn or used by [Doreen] and currently in her possession. C. To further equalize the division of the community property assets, [Doreen] is ordered to pay to [Peter] forthwith the cash sum of $9,732.00. On April 5, 1984, respondent *104 issued a notice of deficiency to petitioners in which the CMI loss was disallowed in full and it was determined that the resulting deficiency was due from both petitioners. OPINION Doreen claims that she is not liable for the deficiency because she is an innocent spouse under section 6013(e). [3] To qualify for such relief, she has the burden of proving that each of the conditions set forth in section 6013(e) has been met. ; Rule 142(a). As applicable to this case these conditions are that: (1) on the joint return for 1980 there was a substantial understatement [4] of tax attributable to grossly erroneous items of Peter; (2) Doreen did not know and had no reason to know of the substantial understatement; and (3) taking into account all of the facts and circumstances, it is inequitable to hold her liable for the deficiency attributed to the understatement. Respondent contends that none of the conditions were met. *105 With regard to the first condition, neither party disputes the existence of a substantial understatement and from the record as a whole we have no difficulty in finding that the payments to CMI and the claimed loss with respect thereto are solely attributable to Peter despite his unreliable testimony to the effect that the CMI investment was more in the nature of a joint venture which was freely discussed with and agreed to by Doreen. We are also satisfied that the claimed loss is a grossly erroneous item which is defined to include "any claim of a deduction, * * * for which there is no basis in fact or law." Section 6013(e)(2)(B). A claimed deduction has no basis in law when it does not qualify as a deductible expenditure under well-settled legal principles or when no substantial legal argument can be made to support its deductibility. . According to CMI's prospectus its sole objective was to substantially reduce or completely eliminate the income tax liability of its investors. Consequently Peter's "investment" with CMI could not have been entered into with a bona fide objective of making a profit and consequently *106 the loss attributable thereto constitutes a grossly erroneous item because it does not qualify as a deductible expenditure under well settled legal principles. See , affd. , cert. denied ; , affg. a Memorandum Opinion of this Court; . However, from an examination of the entire record we are unable to conclude that Doreen has established that in signing the return she had no reason to know of the substantial understatement and that after taking into account all of the facts and circumstances it would be inequitable to hold her liable for the deficiency. First she testified that she learned about Peter's first payment to CMI before the end of 1980 and about the second payment in early February of 1981 but nevertheless she signed the 1980 return on February 13, 1981. Her claim that she only did so because Peter pushed her into a chair and subjected her to verbal abuse [5] is not *107 acceptable when considered with her obvious intelligence and the fact that she is a college graduate and during the year supervised eleven individuals at Allianz Insurance Company. Furthermore, she had filed returns since 1970 and readily admitted being aware of the importance of doing so. Finally, she subsequently received and turned over to her divorce lawyer refund checks which were generated by the loss claimed on the 1980 return. In the division of their property pursuant to the divorce, Doreen ultimately received approximately 50 percent of the $17,000 received from these checks. From all of the above, we conclude that Doreen had reason to know that a substantial understatement existed with respect to the 1980 joint return and that it would not be inequitable to hold her liable for the deficiency. Therefore, Doreen does not qualify for relief under section 6013(e). To reflect the foregoing and the concessions, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided.↩
2. Petitioners were divorced in 1983 and at the date of trial Doreen's name was Doreen J. Allen.↩
3. Section 6013(e) provides: (e) SPOUSE RELIEVED OF LIABILITY IN CERTAIN CASES. -- (1) IN GENERAL. -- Under regulations prescribed by the Secretary, if -- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement. Section 6013(e) was amended by the Tax Reform Act of 1984 with retroactive application to all taxable years to which the Internal Revenue Code of 1954 and 1939 applies. See Pub. L. 98-369, sec. 424, 98 Stat. 801; H. Rept. 98-432, Pt. 2, 1401, 1503, (March 5, 1984). ↩
4. A "substantial understatement" means an understatement that exceeds $500. Section 6013(e)(3).↩
5. We have found that Doreen's signature on the Application for Tentative Refund Form 1045, is a forgery. Consequently, the filing of this form has no bearing on her knowledge of the understatement.↩