MARIA RIVERA, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 41343-85.        Filed August 25, 1987.

*Stuart E. Seigel*, *Matthew Lerner*, and *James Fuller*, for the petitioner.
*Cynthia Mattson*, for the respondent.

OPINION

KÖRNER, *Judge*: This case was heard by Special Trial Judge Peter J. Panuthos pursuant to the provisions of section 7456 of the Code.[1] The Court agrees with and

---

[1]This case was assigned pursuant to sec. 7456 (redesignated as sec. 7443A by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1556, 100 Stat. 2755) and Rule 180. Unless otherwise

adopts the Special Trial Judge's opinion, which is set forth below.

## OPINION OF THE SPECIAL TRIAL JUDGE

PANUTHOS, *Special Trial Judge*: This case is before the Court on cross-motions for partial summary judgment on the issue of whether forward contracts in stock constitute positions in personal property within the meaning of section 1092(d)(2)(A) of the Internal Revenue Code of 1954. Respondent has also moved for partial summary judgment on the issue of whether petitioner is liable, pursuant to section 6621(c), Tax Reform Act of 1986 (formerly section 6621(d)), for the increased interest rate on substantial underpayments of tax attributable to tax-motivated transactions such as straddles.

### *Forward Contracts*

Forward contracts are binding contracts providing for the future delivery of specified securities at a fixed price on a specified delivery date and at, or prior to, a specified delivery time. The profitability of an investment in forward contracts depends upon changes in the market price of the underlying securities to which the forward contracts relate.

A purchaser of a long-forward contract is obligated to purchase the underlying securities covered by the forward contract at the stated contract price, on the delivery date, and at, or prior to, the delivery time. In general, the purchaser of a long-forward contract seeks to profit from an increase in the market price of the underlying securities during the term of the contract. However, the long-forward contract purchaser must not only predict whether the price of the stock is going to rise, but also when it will rise. If the stock price does not rise above the contract price by the delivery date, the long-forward contract purchaser will incur losses arising from his obligation to pay a purchase price in excess of the market value of the securities purchased.

Purchasers of short-forward contracts are obligated to sell the underlying securities at the stated contract price, on the

noted, all section references are to the Internal Revenue Code of 1954 as in effect in 1981. All Rule references are to the Tax Court Rules of Practice and Procedure.

delivery date, and at, or prior to, delivery time. A purchaser of short-forward contracts seeks to profit from a decline in the market price of the underlying securities. In order for the purchase of a short-forward contract to be profitable, the market price of the underlying securities must decline sufficiently below the contract price to cover any transaction costs. If the market price of the underlying securities increases, the purchaser of the short-forward contract is subject to a potentially large loss arising from his obligation to deliver securities with a market value in excess of the contract price.

## FACTS

Merit Securities, Inc. (Merit), is a Delaware corporation registered as a broker-dealer with the Securities and Exchange Commission. By private offering memorandum, dated November 6, 1981, Merit offered investment in stock forward contracts to a limited number of sophisticated investors.[2] The forward contracts covered a limited number of issues of corporate stock selected by Merit and listed on either the New York Stock Exchange or the American Stock Exchange. Each forward contract covered 1,000 shares of the underlying securities.

Pursuant to the offering, petitioner purchased forward contracts in stock. In many, if not all situations, petitioner entered into "spread" transactions, in which she purchased both long- and short-forward contracts on the same underlying securities, but having different delivery dates and different contract prices. On her 1981 Federal income tax return, petitioner claimed a $653,550 short-term capital loss and a $45,750 ordinary loss, both of which arose from her investments in forward contracts.

Respondent issued a notice of deficiency on August 16, 1985, determining deficiencies in petitioner's Federal income taxes for the years 1980 and 1981. The only year at issue for the purpose of these motions is 1981. Regarding that year, respondent determined that petitioner was not entitled to the losses claimed because, among other things, the transactions giving rise to the losses were straddles subject

---

[2] Approximately 48 investors participated in this investment program.

to section 1092, and petitioner had not established the amount by which any losses from such transactions exceeded unrealized gains from offsetting positions.[3]

Pursuant to the notice of deficiency, petitioner filed a timely petition with this Court.[4]

SUMMARY JUDGMENT

Rule 121 provides that a party may move for summary judgment upon all or any part of the legal issues in controversy, so long as there is no genuine issue as to any material fact. Rule 121(b) provides that a decision shall be rendered if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. The Rule further provides that "partial summary adjudication may be made which does not dispose of all the issues in the case." *Elkins v. Commissioner*, 81 T.C. 669, 674 (1983).

Summary judgment is derived from rule 56 of the Federal Rules of Civil Procedure. Thus, in any question requiring the interpretation of Rule 121, the authorities interpreting rule 56, Federal Rules of Civil Procedure, are considered by the Tax Court. *Espinoza v. Commissioner*, 78 T.C. 412, 416-417 (1982).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact. *Weinberger v. Hynson, Westcott & Dunning*, 412 U.S. 609, 622 n. 18 (1973); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Where cross-motions have been filed, each party has the burden of establishing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. The fact that one party fails to satisfy that burden does not mean that the opposing party has satisfied his burden and should be granted summary judgment on the other motion. *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).[5] In considering a motion for summary judgment, a court must view the factual materials

---

[3]Although respondent, in his notice of deficiency, disallowed the total $699,300 in losses, he argues in his motion that if sec. 1092 applies, petitioner is entitled to claim a loss in the amount of $8,208, which is the amount of loss in excess of unrealized gain.

[4]At the time of filing the petition herein, petitioner resided at Tiberon, California.

[5]*National Starch & Chemical Corp. v. Commissioner*, T.C. Memo. 1986-512.

and inferences drawn therefrom in the light most favorable to the party opposing the motion. *Estate of Gardner v. Commissioner*, 82 T.C. 989, 990 (1984); *Elkins v. Commissioner, supra* at 674; *Jacklin v. Commissioner*, 79 T.C. 340, 344 (1982).

The question presented by the parties is a purely legal question—whether section 1092 covers forward contracts in stock. If we find that as a matter of law, stock forward contracts do not constitute positions in personal property within the meaning of section 1092, then petitioner will be entitled to summary judgment on this issue. However, if we find that stock forward contracts do constitute positions in personal property, then we must examine the requirements of section 1092 and determine whether there remain material questions of fact as to whether the forward contracts were "actively traded" within the meaning of section 1092(d)(1), and whether petitioner held "offsetting positions" resulting in a "substantial diminution" of risk within the meaning of section 1092(c)(2)(A).

### Section 1092 [6]

Section 1092(a)(1)(A) provides that "Any loss with respect to 1 or more positions shall be taken into account for any taxable year only to the extent that the amount of such loss exceeds the unrecognized gain (if any) with respect to 1 or more positions which * * * were offsetting positions with respect to 1 or more positions from which the loss arose." Section 1092(d)(2)(A) provides that the term "position" means an interest (including a futures or forward contract or option) in personal property. Section 1092(d)(1) provides that the term "personal property" means any personal property (other than stock) of a type which is actively traded.

Respondent argues that section 1092 includes within its scope, forward contracts in *stock*, and thus that he is entitled to summary judgment on this issue. While respondent acknowledges that the statute on its face appears to

[6]Sec. 1092 has undergone significant changes since it was originally added to the Code in 1981. See Tax Reform Act of 1984, Pub. L. 98-369, sec. 101, 98 Stat. 616-619; see also Tax Reform Act of 1986, Pub. L. 99-514, sec. 1808, 100 Stat. 2817; Technical Corrections Act of 1982, Pub. L. 97-448, sec. 105, 96 Stat. 2384. All references in sec. 1092 herein are to that section as in effect in 1981.

exclude forward contracts in *stock*, he looks to the following excerpt from the General Explanation of the Economic Recovery Tax Act of 1981, to support his position:

The Act defines personal property as any personal property, other than stock, of a type which is actively traded. A position is an interest in personal property, including a futures contract, *a forward contract*, or an option. In addition to corporate stock, the Act does not apply to real property or to property which is not actively traded. U.S. currency does not constitute personal property as defined since only property or interests in property that may result in gain or loss on their disposition are subject to the straddle limitations. *Further, a futures contract, forward contract, option (other than a stock option) or other interest, while constituting a position in other property, is also personal property as defined in the Act if it is actively traded.* Thus, for example, a debt instrument is a contractual right entitling its holder to an amount of cash on a future date and also constitutes personal property if it is actively traded. Similarly, a futures contract that does not require delivery of personal property but calls for a cash settlement predicated on the future price of deposits, obligations, stock, securities, or other assets is itself personal property if actively traded. *In order to be treated as actively traded, property need not be traded on an exchange or in a recognized market.*

The term "position" includes options to buy or sell stock if such stock is actively traded, provided either that the period during which the option may be exercised exceeds the period required for long-term capital gain treatment or that the options are not traded on a domestic or designated foreign exchange. Thus, the Act's major rules apply to offsetting positions in stock options which can be held for more than 12 months. * * *

[Staff of the Joint Committee on Taxation, 97th Cong., General Explanation of the Economic Recovery Tax Act of 1981, at 289-290 (1981); emphasis added by respondent.]

Petitioner, on the other hand, argues that the clear language of section 1092 excludes *stock* from the definition of personal property. Further, with regard to respondent's reliance on the General Explanation, petitioner argues (1) that resort to the legislative history is inappropriate where, as here, the statute is clear on its face; (2) that the General Explanation does not rise to the level of legislative history; and, (3) that, in any case, the General Explanation supports petitioner's position.

We do not believe that the language of section 1092 on its face clearly excludes the interpretation urged by respondent. Accordingly, resort to the legislative history is

appropriate to aid in the interpretation of the statute. However, the General Explanation does not technically rise to the level of legislative history because it was authored by a congressional staff and not by Congress.[7] *Estate of Hutchinson v. Commissioner*, 765 F.2d 665, 669-670 (7th Cir. 1985), affg. a Memorandum Opinion of this Court.

Resorting to the legislative history of section 1092, we think S. Rept. 97-144 (1981), 1981-2 C.B. 412, 469, is particularly significant. In this report, the Committee on Finance evidences its intent to focus section 1092 on *commodity*[8] straddles. There is no evidence in its statement of reasons for change that the Committee intended to focus on forward contracts in *stock*. To the contrary, the Committee was concerned with the significant growth in the use of commodity futures as tax shelters. S. Rept. 97-144, *supra*, 1981-2 C.B. at 469. Further, the Conference report on the Economic Recovery Tax Act of 1981 states as follows:

The bill applies to commodity-related property which includes future contracts, forward contracts, actual commodities (including metals), Treasury bills, other debt instruments, currency, and any interest in the foregoing. The bill does not apply to real estate, stock (except commodity substitute stock), interest income and short-term stock options. * * * [9] [H. Rept. 97-215 (Conf.) (1981), 1981-2 C.B. 481, 512.]

Thus, the Senate report and Conference report support the interpretation that section 1092 was intended to apply only to commodity-related property, with the exception of certain stock options. With regard to stock options, the Senate report provides that:

---

[7]We are not unmindful of the fact that both the Supreme Court, and this Court, have relied upon the General Explanation in analyzing tax statutes (see, e.g., *FPC v. Memphis Light, Gas & Water Div.*, 411 U.S. 458, 471-472 (1973); *Estate of Sachs v. Commissioner*, 88 T.C. 769 (1987)), and that the General Explanation is entitled to great respect (see *Estate of Hutchinson v. Commissioner*, 765 F.2d 665, 669-670 (7th Cir. 1985), affg. a Memorandum Opinion of this Court; *McDonald v. Commissioner*, 764 F.2d 322, 336-337 n. 25 (5th Cir. 1985), affg. a Memorandum Opinion of this Court). Even if we rely on the General Explanation, we do not read it as supportive of respondent's conclusion.

[8]The legislative history of the Economic Recovery Tax Act of 1981 indicates that for the purposes of sec. 1092, stock is not a commodity or commodity related property. See H. Rept. 97-215 (Conf.)(1981), 1981-2 C.B. 481, 512.

[9]The parenthetical regarding "commodity substitute stock" was contained in the House version of the Economic Recovery Tax Act of 1981, but omitted from the Senate amendment. Rather, the Senate Amendment provided that "The loss deferral rule applies to actively-traded personal property (other than stock). This rule does not apply to such property as real estate, stock and short term stock options." The Conference agreement followed the Senate amendment.

Thus, the bill's major rules apply to offsetting positions in stock options which can be held for more than 12 months. The definition of position excludes, and thus the major rules are inapplicable to, stock options traded on United States Exchanges, if the options cannot produce a long-term capital gain or loss. [S. Rept. 97-144, *supra*, 1981-2 C.B. at 472.]

Further, Congress recognized that there was already a Code provision, section 1091, that prevented a taxpayer from selling stock which had declined in value solely to recognize a tax loss that did not reflect a true economic loss. Therefore, Congress, by enacting section 1092, was seeking to provide a Code provision that would apply to the disposition of property other than stock:

The Internal Revenue Code includes a wash-sale rule [sec. 1091] providing for non-recognition of certain losses which do not constitute true economic losses where the taxpayer has not terminated his investment in the loss property. This provision disallows any loss from the disposition of *stock* or securities where substantially identical *stock* or securities (or an option or contract to acquire such *stock* or securities) are acquired by the taxpayer during the period beginning 30 days before the date of sale and ending 30 days after such date. This provision prevents a taxpayer from selling *stock* which has declined in value in order to establish a loss for tax purposes and immediately reacquiring similar *stock*, because the sale and reacquisition together do not significantly alter the taxpayer's position with respect to that *stock*. No similar Code provision applies with respect to the disposition of *property other than shares of stock* or securities. [S. Rept. 97-144, *supra*, 1981-2 C.B. at 468; emphasis added, fn. ref. omitted).]

Accordingly, we interpret section 1092 to mean that it applies to commodity-related property and not to interests in stock, except that it does apply to certain stock options which can be held for more than 12 months.[10]

Respondent also argues that the legislative history of the Tax Reform Act of 1984, which repealed the section 1092 exception for stock, indicates that the exclusion of "stock" from the definition of personal property under prior law applied only to "direct positions in stock." In particular, respondent points to a sentence in the legislative history of the 1984 Act which states "The House bill repeals the exception from the tax straddle rules for direct positions in

---

[10]The Code as in effect in 1981 provided that in order to produce long-term capital gain, property had to be held more than 12 months. Sec. 1222(3).

stock." See H. Rept. 98-861 (1984), 1984-3 C.B. (Vol. 2) 154. Respondent appears to argue that forward contracts in stock are "indirect positions in stock" which have always been covered by section 1092, because the exception only applied to "direct positions in stock." Respondent misunderstands the meaning of "direct positions in stock." Respondent apparently understands that phrase to mean ownership of the actual shares of stock (direct) as opposed to ownership of an interest in stock (indirect), such as a futures or forward contract. It is clear to us, however, that "direct positions in stock" means a position held in the taxpayer's own name as opposed to indirect ownership through a related person or flowthrough entity. See sec. 1092(d)(3); secs. 1.1092(b)-1T(g) and 1.1092(b)-2T(a)(1) and (f), Temporary Income Tax Regs.; Cf. secs. 267(c), 318(a), and 544(a).

We conclude that section 1092(d)(1) excludes stock from the definition of personal property. Therefore, a stock forward contract is not a position in personal property within the meaning of section 1092(d)(2). Accordingly, petitioner is entitled to partial summary judgment on this issue.[11]

### Section 6621(c)—Increased Rate of Interest on Substantial Underpayment of Tax

Section 6621(c)(1), Tax Reform Act of 1986 (formerly section 6621(d)) provides that "In the case of interest payable under section 6601 with respect to any substantial underpayment attributable to tax motivated transactions, the annual rate of interest established under this section shall be 120 percent of the underpayment rate established under this subsection." We find that respondent has failed to establish that, as a matter of law, there has been a substantial underpayment of tax due to a tax-motivated transaction. Accordingly, respondent is not entitled to summary judgment on this issue.

---

[11]Since we have determined that sec. 1092 does not apply to forward contracts in *stock*, we need not consider the questions of whether the contracts were actively traded and whether the offsetting positions resulted in a substantial diminution of risk.

For the reasons stated herein, petitioner's motion for partial summary judgment will be granted and respondent's motion for partial summary judgment will be denied.

*An appropriate order will be issued.*