BENNIE S. LAWSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lawson v. Commissioner
Docket No. 20931-92
United States Tax Court
T.C. Memo 1994-286; 1994 Tax Ct. Memo LEXIS 289; 67 T.C.M. (CCH) 3121; June 21, 1994, Filed *289 Decision will be entered under Rule 155. Bennie S. Lawson, pro se. For respondent: Josh Ungerman. DAWSON
DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined deficiencies in the joint Federal income taxes of Bennie S. Lawson (hereinafter petitioner) and her husband Alvin C. Lawson (hereinafter Lawson) of $ 6,761 and $ 8,721, for 1987 and 1988, respectively. Respondent also determined that petitioner and Lawson (collectively referred to as the Lawsons) are liable for additions to tax for failure to timely file Federal income tax returns pursuant to section 6651(a)(1) [1] in the amounts of $ 315 and $ 1,563 for 1987 and 1988, respectively, and an addition to tax for negligence or intentional disregard of rules or regulations pursuant to section 6653(a)(1) in the amount of $ 436 for 1988. Petitioner filed a petition with this Court. Lawson did not. The issues for decision are: (1) Whether petitioner is entitled to relief from joint and several liability pursuant to section 6013(e) and (2) whether she is liable for the additions to tax. *290 FINDINGS OF FACT Some of the facts have been stipulated, and they are so found. Petitioner and Lawson filed joint Federal income tax returns for 1987 and 1988 on October 27, 1989, and on June 21, 1990, respectively. Petitioner resided in Irving, Texas, when she filed her petition in this case. Petitioner married Lawson in 1962. Although they were separated during the years in issue, petitioner submitted her income tax information to Lawson, who had the joint income tax returns professionally prepared. Petitioner signed those income tax returns without reviewing their contents. During the more than 20 years petitioner was married to Lawson, he always had their joint income tax returns professionally prepared, and petitioner had no reason to question their accuracy. She expressed the same faith in her husband and his tax preparer at the time of trial. Because petitioner knew very little about Lawson's business activities, did not possess any of his books and records, and did not know his whereabouts at the time respondent selected their 1987 and 1988 joint Federal income tax returns for audit, she was unable to substantiate any of the items that were attributable to Lawson's *291 activities. Consequently, respondent disallowed all of the items specified in the notice of deficiency for lack of substantiation. Among the items disallowed by respondent for 1987 was a $ 37,400 loss from "H & G" property claimed on Form 4797 (Gains and Losses From Sales or Exchanges of Assets Used in a Trade or Business and Involuntary Conversions). Respondent determined in the notice of deficiency that the $ 37,400 shown on your return as a loss from the sale of Lyne & Glass, Inc. stock is not allowed since it has not been established that any loss occurred or, if a loss occurred, that it qualified as an ordinary loss. Accordingly, your taxable income is increased $ 37,400 for the 1987 tax year.
In addition, respondent disallowed a deduction reported on Schedule A attached to the Lawsons' 1987 Federal income tax return in the amount of $ 9,558 in unreimbursed employee business expenses. Lawson claimed these expenses in connection with his employment as an outside salesman. Respondent also disallowed the $ 2,917 Lawson claimed as a mortgage interest deduction in that year. On Schedule C attached to the Lawsons' 1988 Federal income tax return, Lawson reported gross *292 receipts from outside sales in the amount of $ 23,904, and cost of goods sold in the amount of $ 24,952. He also deducted various business expenses totaling $ 11,158. In the notice of deficiency, respondent disallowed the cost of goods sold and business expenses. Petitioner never possessed any information regarding the items reported by Lawson on their joint 1987 and 1988 Federal income tax returns, and she did not live with Lawson during the years in issue. OPINION I. Innocent Spouse
Petitioner contends that she should be relieved of joint and several liability for the deficiencies and additions to tax as an "innocent spouse" under section 6013(e). Respondent maintains that petitioner does not qualify as an "innocent spouse" because none of the items disallowed constitute "grossly erroneous items" as required by section 6013(e)(1)(B). In general, when a husband and wife file a joint Federal income tax return, they are jointly and severally liable for the tax due. Sec. 6013(d)(3). However, to alleviate some of the harsh results of this rule, Congress enacted special provisions to relieve a spouse from such liability, but only if such spouse satisfies certain conditions. *293 Sec. 6013(e). To qualify for section 6013(e) relief, a spouse must show that: (1) A joint return was filed for the years in issue; (2) the return contains a substantial understatement of tax; (3) such understatement is attributable to grossly erroneous items of the other spouse; (4) in signing the return, the spouse did not know, and had no reason to know, that the return contained a substantial understatement of tax; and (5) when considering all the facts and circumstances, it would be inequitable to hold the spouse liable for the deficiency in tax attributable to the substantial understatement. Sec. 6013(e); Purcell v. Commissioner, 86 T.C. 228, 235 (1986), affd. 826 F.2d 470 (6th Cir. 1987). An understatement is substantial if it exceeds $ 500. Sec. 6013(e)(3). Respondent does not dispute that petitioner satisfies all of the required criteria except for one; i.e., the items disallowed are not "grossly erroneous items" as defined in section 6013(e)(2). [2] *295 The term "grossly erroneous items" includes "any item of gross income * * * which is omitted from gross income." Sec. 6013(e)(2)(A). Moreover, a claim of a deduction, *294 credit, or basis is considered to be a "grossly erroneous item", only if it lacks a "basis in fact or law". Sec. 6013(e)(2)(B). In order to determine whether respondent's adjustments are with respect to "grossly erroneous items", it is necessary to decide whether the adjustment is with respect to an item of gross income (which is automatically considered grossly erroneous), or an item of deduction, credit, or basis (which must be proven to be without any basis in fact or law). Flynn v. Commissioner, 93 T.C. 355, 360 (1989). Thus, a taxpayer seeking section 6013(e) relief must show that there is no basis in fact or law for an item only if it is an item of deduction, credit, or basis. Moreover, the spouse seeking relief needs to prove only that an item of deduction, credit, or basis lacked either a basis in fact or a basis in law, but need not prove both. See Ness v. Commissioner, 94 T.C. 784 (1990), revd. on other grounds 954 F.2d 1495 (9th Cir. 1992); Douglas v. Commissioner, 86 T.C. 758, 762 (1986). [3]
Although there is no statutory definition, the phrase "no basis in fact or law" has been construed as an item which is frivolous, fraudulent, or phony. Douglas v. Commissioner, supra at 763. A deduction has no basis in fact if the expenditure for which it is claimed was never made. Id. Further, a deduction has no basis in law if the expenditure, even if made, does not qualify as a deductible expense under well-settled legal principles or when no substantial legal argument can be made in support of its deductibility. Id. However, the fact that a deduction has been disallowed does not, in itself, dictate a finding that the deduction is "grossly erroneous". Russo v. Commissioner, 98 T.C. 28, 32 (1992). For example, deductions disallowed for lack of substantiation are not per se "grossly erroneous". United States v. Shanbaum, 10 F.3d 305, 314-315 (5th Cir. 1994); *296 Flynn v. Commissioner, supra at 364; Douglas v. Commissioner, supra at 763. Respondent disallowed all of the losses, cost of goods sold, business expenses and mortgage interest claimed by Lawson because petitioner could not locate Lawson and his substantiating records. However, petitioner testified that she believed Lawson had provided their tax return preparer with the documentation needed to prepare their income tax returns and that the preparer would not have knowingly claimed any deductions to which she and Lawson were not legally entitled. Based on this representation, respondent argues that all of the items in issue have a basis in fact and, therefore, are not "grossly erroneous items" within the meaning of section 6013(e)(2)(B). We disagree with respondent as to two of the items. Cost of Goods Sold
Respondent first maintains that the cost of goods sold claimed by Lawson on the 1988 Schedule C is not a "grossly erroneous item" because petitioner failed to show that it had no basis in law or fact. However, since the origin of the Federal income tax, cost of goods sold has been taken into account *297 in computing business gross income. Doyle v. Mitchell Bros. Co., 247 U.S. 179, 184-185 (1918); [4]Rotolo v. Commissioner, 88 T.C. 1500, 1514 (1987); Metra Chem Corp. v. Commissioner, 88 T.C. 654, 661 (1987); McKenna v. Commissioner, 1 B.T.A. 326, 332 (1925); secs. 1.61-3(a), 1.162-1(a), Income Tax Regs. In fact, the regulations under section 22, I.R.C. 1939 (the predecessor of sec. 61, I.R.C. 1954), provided that: In the case of a manufacturing, merchandising, or mining business, "gross income" means the total sales, less the cost of goods sold, plus any income from investments and from incidental income or outside operations or sources. * * * [Sec. 29.22(a)-5, Regs. 111 (1943).]
Currently, section *298 61(a)(2) includes gross income from business, and the regulations thereunder ( section 1.61-3, Income Tax Regs.) still contain the language quoted above from the regulations under the 1939 Code. Moreover, section 1.162-1(a), Income Tax Regs., specifically provides: The cost of goods purchased for resale, with proper adjustment for opening and closing inventories, is deducted from gross sales in computing gross income. See paragraph (a) of section 1.61-3. * * *
Thus, both historically and currently, cost of goods sold is an item taken into account in computing gross income and is not an item of deduction. Metra Chem Corp. v. Commissioner, supra.
However, historically, there was some debate as to whether an overstatement of cost of goods sold constituted an omission from gross income under section 275(c) of the 1939 Code. That section provided for an exception to the regular statutory period of limitations where "the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return". When called upon to interpret "gross income" as used in that *299 statute, several courts of appeals concluded that it meant "gross receipts", Goodenow v. Commissioner, 238 F.2d 20, 22 (8th Cir. 1956), revg. 25 T.C. 1 (1955); Uptegrove Lumber Co. v. Commissioner, 204 F.2d 570, 572-573 (3d Cir. 1953), revg. a Memorandum of this Court dated July 16, 1952, while other courts of appeals and the Tax Court took the position that it meant "gross profits", [5]Carew v. Commissioner, 215 F.2d 58, 61-62 (6th Cir. 1954), affg. a Memorandum of this Court dated March 12, 1953; Goodenow v. Commissioner, 25 T.C. at 3-4; Estate of Gibbs v. Commissioner, 21 T.C. 443 (1954); Edenfield v. Commissioner, 19 T.C. 13 (1952). In 1958, the Supreme Court resolved the conflict among the courts in Colony, Inc. v. Commissioner, 357 U.S. 28 (1958). Looking at the legislative history of section 275(c), I.R.C. 1939, the Supreme Court concluded that Congress intended to extend the statute of limitations when the required amount of gross *300 receipts were omitted from a return. However, with respect to taxable years beginning after August 17, 1954, Congress had already resolved the problem addressed in Colony, Inc. v. Commissioner, supra, by enacting section 6501(e)(1)(A) of the 1954 Code. [6] See H. Rept. 1337, 83rd Cong., 2d Sess., at A414 (1954); S. Rept. 1622, 83rd Cong., 2d Sess. (1954). In that section Congress broadened the definition of "gross income" to mean "total receipts from the sale of goods or services prior to diminution by the cost of such sales or services" and provided that "any amount as to which adequate information is given on the return will not be taken into account in determining whether there has been an omission of 25 percent." H. Rept. 1337, supra at A414. This special definition of "gross income" was limited to interpretations of section *301 6501(e) and was not intended to be applied outside of that section unless the Code otherwise provided. Northern Ind. Pub. Serv. Co. & Subs. v. Commissioner, 101 T.C. 294, 299 n.7 (1993) (citing Green v. Commissioner, 7 T.C. 263, 276-277 (1946)); Flynn v. Commissioner, 93 T.C. 355, 361 (1989); Insulglass Corp. v. Commissioner, 84 T.C. 203, 210 (1985); Schneider v. Commissioner, T.C. Memo. 1985-139. *302 In 1971 Congress enacted section 6013(e) (the "innocent spouse" statute) which exempted from joint and several liability a taxpayer who filed a joint return with a spouse who omitted from gross income an amount equal to 25 percent of the gross income stated on the return. Act of Jan. 12, 1971, Pub. L. 91-679, 84 Stat. 2063. That statute specifically provided that "gross income" had the same meaning as under section 6501(e)(1)(A). Sec. 6013(e)(2)(B). Thus, with that cross-reference, a spouse could not be relieved of joint and several liability with respect to the other spouse's overstated cost of goods sold. Resnick v. Commissioner, 63 T.C. 524 (1975); Betnar v. Commissioner, T.C. Memo. 1980-388. When Congress enacted section 6013(e) in 1971, it sought to remedy some of the inequities that resulted when one spouse was responsible for the other spouse's tax bill simply because they had filed a joint return. Sanders v. United States, 509 F.2d 162, 166-167 (5th Cir. 1975). Because that section applied only when gross receipts were omitted, Congress retroactively amended section 6013(e) *303 in 1984 to broaden the scope of "innocent spouse" relief.[7] Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 494, 801-802 (hereinafter the 1984 amendment); H. Rept. 98-432 (Vol. 1), at 201. As part of the 1984 Amendment, Congress repealed the cross-reference in the 1971 version of section 6013(e)(2)(B) that tied the term "gross income" to the definition contained in section 6501(e)(1)(A). Moreover, the House report to the 1984 amendment clarified that "The omission from income determination [under section 6013(e)] may apply notwithstanding that adequate information about the erroneous items was provided on the return." H. Rept. 98-432, at 201. In a case decided just 5 months before the 1984 amendment, LaBelle v. Commissioner, T.C. Memo. 1984-69, *304 we held that the taxpayer was not entitled to "innocent spouse" relief because her spouse's overstated cost of goods sold did not constitute an omission from gross income within the meaning of sections 6013(e)(2)(B) and 6501(e)(1)(A), as then in effect. The taxpayer appealed, and the Court of Appeals for the Ninth Circuit remanded the case for findings in light of the 1984 amendment. On remand, we held that the taxpayer was entitled to relief under the new version of section 6013(e) because, after Congress' removal of the cross-reference to section 6501(e)(1)(A), an overstatement of cost of goods sold constituted an omission from gross income and, thus, was a "grossly erroneous item" under section 6013(e)(2)(A). LaBelle v. Commissioner, T.C. Memo. 1986-602. In Flynn v. Commissioner, supra, we reasoned that because section 6013(e) no longer cross-referenced section 6501(e)(1)(A), the special definition of gross income from business no longer applied to section 6013(e). As a result, we noted in Flynn that our opinions issued prior to the 1984 amendment on the definition of omissions from gross income under section *305 6013(e) were no longer controlling to the extent they defined "gross income" in light of section 6501(e). Id. at 361 (citing Ketchum v. Commissioner, 77 T.C. 1204 (1981), revd. 697 F.2d 466 (2d Cir. 1982)); for other cases decided before the 1984 Amendment, see, e.g., Resnick v. Commissioner, supra; Betnar v. Commissioner, supra.Accordingly, we examined the applicable Code provisions and decided to again rely on the longstanding and venerable definition of "gross income" provided in section 61. Flynn v. Commissioner, supra at 361. Nevertheless, respondent argues that cost of goods sold is covered under section 6013(e)(2)(B) as "a deduction, credit, or basis" which is a "grossly erroneous item" only if claimed "in an amount for which there is no basis in fact or law." Because cost of goods sold is neither a credit nor a deduction, Metra Chem Corp. v. Commissioner, 88 T.C. 654, 661 (1987), we address respondent's argument that cost of goods sold is a claim *306 of "basis". Under the Internal Revenue Code the term "basis" refers to a taxpayer's capital stake in property. It is used to determine the gain or loss on the sale or exchange of property and the amount of depreciation allowances. Basis has the same meaning in section 6013(e)(2)(B) as it has in sections 1011-1023. Estate of Simmons v. Commissioner, 94 T.C. 682, 684 n.3 (1990). On the other hand, cost of goods sold is an inventory accounting concept, and may vary from taxpayer to taxpayer depending upon the taxpayer's method of accounting, especially the chosen method of valuing inventory. See secs. 471-474 and the regulations thereunder; Primo Pants Co. v. Commissioner, 78 T.C. 705 (1982). We therefore do not read the term "basis" in section 6013(e)(2)(B) to include cost of goods sold. [8]
*307 Consequently, we reach the same conclusion in this case as we did in LaBelle v. Commissioner, T.C. Memo. 1986-602. Because Congress removed the cross-reference to section 6501(e)(1)(A) from section 6013(e), we conclude that the term "gross income" in section 6013(e)(2)(B) has the same meaning as defined in section 61(a). It follows that cost of goods sold affects the amount of gross income which should have been reported and, therefore, the overstatement of cost of good sold on the Lawsons' return created an omission from gross income within the purview of section 6013(e)(2)(A). Because items falling within that section are automatically grossly erroneous items, we hold that petitioner is entitled to section 6013(e) relief for 1988 as to the amount of tax liability attributable to the $ 24,952 of cost of goods sold claimed by Lawson and any additions to tax attributable thereto. Claimed Ordinary Loss on Sale of Capital Stock
Lawson also claimed on Form 4797 an ordinary loss of $ 37,400 on the sale of "H & G" property used in a trade or business. However, in the notice of deficiency respondent determined that Lawson had sold stock in Lyne & *308 Glass, Inc., not "H & G" stock. Petitioner does not dispute that Lawson sold capital stock. We conclude that Lawson did not sell any property used in a trade or business. He sold stock in Lyne & Glass, Inc. He incorrectly reported the name of the stock on Form 4797 as "H & G". Also, Lawson should have reported such sale of the stock on Schedule D, "Capital Gains and Losses", as a capital loss, subject to the $ 3,000 annual limitation. Consequently, for these reasons, the ordinary loss was incorrectly claimed on the return, and had no basis in fact. Thus, it is a "grossly erroneous item" within the meaning of section 6013(e)(2)(B). Because respondent has conceded that petitioner satisfies all the other requirements for relief under section 6013(e), we hold that petitioner is relieved of liability as to that portion of the 1987 income tax deficiency which is attributable to the ordinary loss of $ 37,400 claimed for an asset sold in a trade or business, [9] and any additions to tax attributable thereto.
*309 Disallowed Schedule C Expenses
Respondent also disallowed business expenses such as auto, travel, meals, and entertainment claimed by Lawson on Schedule C attached to the Lawsons' 1988 Federal income tax return. Petitioner has failed to carry her burden of proof on this issue. See Rule 142(a). Consequently, we hold that petitioner is not entitled to relief under section 6013(e) for the tax attributable to those items. II. Additions to Tax
Failure to File
Respondent also determined that the Lawsons are liable for the addition to tax pursuant to section 6651(a) for failing to timely file 1987 and 1988 Federal income tax returns. Section 6651(a) imposes an addition to tax for a taxpayer's failure to file an income tax return on or before the required filing date. However, an addition to tax for failure to file a return may be avoided if the taxpayer shows that the failure to file was due to reasonable cause and not due to willful neglect. Sec. 6651(a)(1). The taxpayer has the burden of proving that respondent's determination was erroneous. Rule 142(a); Niedringhaus v. Commissioner, 99 T.C. 202, 220-221 (1992). In the absence *310 of an extension of time to file, individuals filing on a calendar year basis generally must file their income tax returns on or before the 15th day of April of the subsequent year. Sec. 6072(a). Therefore, the Lawsons should have filed their income tax return for 1987 on April 15, 1988, and for 1988 on April 15, 1989. Instead, they filed their joint income tax returns for 1987 on October 7, 1989, and for 1988 on June 21, 1990, both dates being substantially after the respective returns were due. Petitioner has not explained why her returns were filed late. Accordingly, we hold that she is liable for the additions to tax under section 6651(a) in reduced amounts, taking into account only those items for which we have held that she is liable. See secs. 6013(e)(1); 6651(a). Negligence
Respondent also determined that the Lawsons are liable for the addition to tax for 1988 under section 6653(a)(1). That section provides that, if any portion of an underpayment of tax is due to negligence or intentional disregard of rules or regulations, an amount equal to 5 percent of the underpayment shall be added to the tax. Negligence has been defined as the lack of due care or failure *311 to do what a reasonable and ordinarily prudent person would do under the circumstances. Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part, revg. in part 43 T.C. 168 (1964); Neely v. Commissioner, 85 T.C. 934, 947 (1985). Because an addition to tax under section 6653(a)(1) is presumptively correct, the taxpayer bears the burden of establishing that respondent's determination was erroneous. Niedringhaus v. Commissioner, supra; Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). Petitioner did not offer any explanation as to why the addition to tax for negligence should not be imposed. Therefore, she has failed to carry her burden of proof. Accordingly, we hold for respondent on this issue, but again in reduced amounts based on the underpayments for which petitioner is liable as set forth in this opinion. Secs. 6013(e); 6653(a)(1). To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Sec. 6013(e)(2) provides that the term "grossly erroneous items" means, with respect to any spouse- (A) any item of gross income attributable to such spouse which is omitted from gross income, and (B) any claim of a deduction, credit, or basis by such spouse in an amount for which there is no basis in fact or law.↩
3. See also Junker v. Commissioner, T.C. Memo. 1987-103↩ (deduction claimed by husband found to be a "grossly erroneous item" where there was no basis in law).
4. Although not authoritative, we note that Line 5 of Schedule C states that the amount reached after subtracting cost of goods sold from gross receipts or sales constitutes "gross income".↩
5. Under these interpretations, "gross income" included a reduction for the cost of goods sold, whereas "gross receipts" did not allow for such reduction.↩
6. Sec. 6501(e)(1)(A), I.R.C. 1954, as originally enacted provided: (1) INCOME TAXES - In the case of any tax imposed by subtitle A - (A) General Rule. - If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. For purposes of this subparagraph -- (i) In the case of a trade or business, the term "gross income" means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services; and (ii) In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary or his delegate of the nature and amount of such item. [Emphasis added.]
Sec. 6501(e)(1)(A)↩ has not been substantially changed since its original enactment in 1954. The only change was enacted in the Tax Reform Act of 1976, Pub. L. 94-455, sec. 1906(b)(13)(A), 90 Stat. 1834, which amended the 1954 Code by substituting "Secretary" for "Secretary or his delegate" each place it appeared.
7. Consequently, section 6013(e) should not be so narrowly construed as to defeat its equitable purpose. Sanders v. United States, 509 F.2d 162, 166-167 (5th Cir. 1975); Grubich v. Commissioner, T.C. Memo. 1993-194↩.
8. We acknowledge that the General Explanation of the Tax Reform Act of 1984 (the "General Explanation") indicated that cost of goods sold is to be treated as an item of basis. Staff of the Joint Committee on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, 721 (J. Comm. Print 1985). However, because sec. 6013(e)(2)(B) is not ambiguous on its face, we need not resort to legislative history to interpret the term "basis". United Air Lines, Inc. v. McMann, 434 U.S. 192, 199 (1977); United States v. American Trucking Associations, 310 U.S. 534, 543 (1940). Further, the Blue Book was authored by the staff of the Joint Committee on Taxation, after the Tax Reform Act of 1984 was enacted. Estate of Hutchinson v. Commissioner, 765 F.2d 665, 669-670 (7th Cir. 1985), affg. T.C. Memo. 1984-55; Zinniel v. Commissioner, 89 T.C. 357, 365-367 (1987), affd. 883 F.2d 1350 (7th Cir. 1989); Rivera v. Commissioner, 89 T.C. 343, 349 (1987). We are mindful of the fact that the Supreme Court and this Court have relied upon the Blue Book in analyzing tax statutes. See, e.g., FPC v. Memphis Light, Gas & Water Div., 411 U.S. 458, 471-472 (1973); Estate of Sachs v. Commissioner, 88 T.C. 769, 775 (1987), affd. in part and revd. in part 856 F.2d 1158 (8th Cir. 1988). However, in those cases, the Blue Book was cited along with and as being consistent with other legislative history. In the case before us, the Blue Book is the only source that says basis includes cost of goods sold. Moreover, in Estate of Sachs v. Commissioner, supra, we relied on the Blue Book after we had determined that the plain meaning of the statute led to an absurd or futile result and that it thwarted clearly expressed congressional intent. Id. at 773-774 (quoting United States v. American Trucking Associations, supra at 543). Interpreting "gross income" in sec. 6013(e)(2)(A), to have the same meaning as it has under sec. 61(a), does not lead to an absurd or futile result and does not thwart clearly expressed congressional intent. Thus, we need not, and do not, rely on the Blue Book explanation as dispositive. See Hong v. Commissioner, 100 T.C. 88, 91↩ (1993).
9. We also note that, because the sale of capital stock would have resulted in a capital loss the deductibility of which is limited to $ 3,000, Lawson's claimed loss has no basis in law to the extent that it exceeds that amount. Secs. 1211(b), 1221; Ness v. Commissioner, 954 F.2d 1495, 1498 (9th Cir. 1992), revg. on another issue 94 T.C. 784↩ (1990).